IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ROBIN BELL, individually, and on behalf of others similarly situated, | : : | CIVIL ACTION |
| Plaintiff, | : | NO. _____ |
| v. | : : | JURY TRIAL DEMANDED |
| COWORX STAFFING SERVICES, LLC., and SYNCHRONOSS, INC., | : : : | |
| Defendants. | : : | |

## COMPLAINT – CLASS/COLLECTIVE ACTION

Plaintiff Robin Bell, individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Class/Collective Action Complaint against Defendants CoWorx Staffing Services, LLC and Synchronoss, Inc., and states as follows:

## INTRODUCTION

1.       This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff Robin Bell (hereinafter referred to as "Plaintiff"), individually and on behalf of all similarly situated persons employed by Defendants CoWorx Staffing Services, LLC and Synchronoss, Inc. (hereinafter collectively referred to as "Defendants"), arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.104, *et seq.*

2.       Defendant Coworx Staffing Services, LLC ("Defendant CoWorx") works with companies, including Defendant Synchronoss, Inc. ("Defendant Synchronoss"), which requires large volume work forces. Defendant CoWorx has employees who work onsite at these companies, including at Defendant Synchronoss' Call Center in Bethlehem, Pennsylvania (Northampton County), where Plaintiff and the putative class members worked. Plaintiff and the

putative class members all worked as customer sales representatives (hereinafter referred to as "CSRs") at Defendant Synchronoss' Call Center performing call center sales services on behalf of Defendant CoWorx's client, Defendant Synchronoss.

3.    Defendants also employed CSRs at a Synchronoss call center in Tucson, Arizona.

4.    Defendants' CSR employees working at the Synchronoss call centers are hourly, non-exempt employees.

5.    Defendants require their CSRs to work a set schedule. However, Defendants do not begin compensating CSRs until they have started up their computers and logged into all of the necessary computer applications. This policy results in CSRs not being paid for all time worked and for all of their overtime compensation in violation of the FLSA and the PMWA.

6.    Defendants' CSRs use multiple computer programs, software programs, servers, and applications in the course of performing their responsibilities at the Synchronoss Call Centers. These programs, servers, and applications are an integral and important part of their work as they cannot perform their job without them.

7.    Defendants' CSRs working onsite at the Synchronoss Call Centers perform the same basic job duties and are required to use the same computer programs, software programs, servers, and applications.

8.    Defendants also failed to include commissions and other incentives received in the calculation of Plaintiff's overtime rates, in violation of the FLSA and PMWA.

9.    Defendants' CSRs' jobs described herein are non-exempt positions.

10.    The U.S. Department of Labor recognizes that call center jobs, like those held by Defendants' CSRs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is

occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday."  Fact Sheet #64 at p. 2.

11.     In order to perform her job, Plaintiff was required to start-up and log-in to various computer programs, software programs, servers, and applications in order to access information and software. The start-up/log-in process took substantial time on a daily basis with said time ranging from 10 to 15 minutes per day, but extending even longer on days when Plaintiff and other CSRs experienced technical issues related to Defendants' computers, software or programs.

12.     Plaintiff was not actually "clocked in" for her shift until *after* the computer start-up/log-in process was complete and she logged into the applicable programs, software, servers, and applications, meaning that Plaintiff and other CSRs worked at least 10 to 15 minutes each per shift that they were never compensated for. This off-the-clock time that Defendants' CSRs spent starting up and logging into each session directly benefitted Defendants and this process was an essential part of their job responsibilities as CSRs.

13.     Defendants provide their CSRs with one unpaid 30-minute lunch break per shift. Defendants' Employee Handbook requires CSRs to clock-in and out of the time keeping system for all lunch breaks.

14.     Defendants, however, require their CSRs to perform off-the-clock, unpaid, work functions during the unpaid lunch breaks including, but not limited to: logging into and out of Defendants' computer programs, software programs, servers, and applications. On an average shift, Plaintiff and other CSRs perform 2 to 3 minutes of off-the-clock, unpaid, work during their lunch breaks.

15.     At the end of each shift, Plaintiff and other CSRs were required to log-out of

Defendants' computer programs, software programs, servers, and applications. The log-out process took substantial time on a daily basis with said time ranging from 5 to 6 minutes per day.

16.    Defendants required Plaintiff and other CSRs to "clock out" *prior* to logging out of the computer programs, software programs, servers, and applications, meaning that Plaintiff and other CSRs worked at least 5 to 6 minutes each per shift that they were never compensated for. This off-the-clock time that Defendants' CSRs spent logging out of each session directly benefitted Defendants and this process was an essential part of their job responsibilities as customer sales representatives.

17.    Between the pre-shift start-up/log-in process, the post-shift log-out process, and the log-in/off during lunch period time, Defendants failed to pay Plaintiff an amount equal to at least 17 to 24 minutes of compensable time per shift. Additionally, Defendants failed to compensate Plaintiff for off-the-clock time spent performing work duties during her lunch breaks.

18.    The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities:  "An example of the first principal activity of the day for agents/ specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

19.    Defendants knew or could have easily determined how long it took for the CSRs working at the Synchronoss Call Centers to complete the pre-shift start-up/log-in process, the post-shift computer log-out process, and the lunch break work duties, and Defendants could have properly compensated Plaintiff and other CSRs for the work that they performed, but did not.

20.    Plaintiff brings this action on behalf of herself and all other similarly situated

hourly CSRs who worked for Defendants at the Synchronoss Call Centers to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

21.    This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

22.    Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

23.    Defendants' annual sales exceed $500,000 and Defendants have more than two employees, so the FLSA applies in this case on an enterprise basis.   Defendants' CSRs engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

24.    This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because it arises under the same facts as her federal claims.

25.    This court has personal jurisdiction over Defendant CoWorx because it does business within Pennsylvania and is registered with the Pennsylvania Secretary of State.

26.    This court has personal jurisdiction over Defendant Synchronoss because it does business within Pennsylvania and is registered with the Pennsylvania Secretary of State.

27.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants employ CSRs in this district, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this district.

## PARTIES

28.     Plaintiff is a resident of Northampton, Pennsylvania (Northampton County) and was employed by Defendants as an hourly CSR at the Synchronoss Call Center in Bethlehem, Pennsylvania (Northampton County) from approximately October 2017 to January 2018. Plaintiff signed a consent form to join this lawsuit, which is attached hereto as *Exhibit A*.

29.     Defendant CoWorx is a for-profit Delaware limited liability company qualified and registered to do business in Pennsylvania.

30.     Defendant Synchronoss is a for-profit Delaware corporation qualified to do business in Pennsylvania.

## GENERAL ALLEGATIONS

31.     Defendant Synchronoss operates and has operated a "call center" in Bethlehem, Pennsylvania, where telephone-dedicated employees similar to the Plaintiff handle phone calls regarding services offered by Defendant Synchronoss to its customers.

32.     Defendant CoWorx provides hourly CSR employees to Defendant Synchronoss to perform the call center and sales functions at the Synchronoss Call Center in Bethlehem, Pennsylvania.

33.     Defendants have an agreement to share the services of Plaintiff and similarly situated CSR employees.

34.     Defendants earn revenue and profits from the services of Plaintiff and other CSR employees.

35.     Defendant CoWorx issues paychecks to Plaintiff and other CSR employees.

36.     Defendants provide supervision, management, control and direction to the CSR employees located at the Synchronoss Call Centers in Bethlehem, Pennsylvania and Tucson,

Arizona.

37.     Plaintiff and the putative class members served as CSRs for Defendants at the Synchronoss Call Centers in either Bethlehem, Pennsylvania or Tucson, Arizona. Plaintiff typically worked eight hour shifts (with a 30 minute unpaid meal period). During her employment, Plaintiff earned $13.00 to $14.00 per hour, plus commissions.

38.     Defendants maintained a non-discretionary bonus and commission compensation policy for CSRs that achieved certain targets or sales.

39.     During pay periods in which CSRs received bonus or commission compensation, Defendants failed to include the bonus or commission compensation as part of the regular rate of pay for purposes of calculating overtime pay.

40.     Both Federal and Pennsylvania law provide that non-discretionary bonuses and commissions must be included as part of an employee's "regular rate of pay" for calculating the appropriate overtime rate.

41.     Defendants violated the FLSA, see, e.g., 29 U.S.C. § 207(e), 29 C.F.R. § 778.211, and the PMWA, see, e.g., 43 P.S. § 333.104(c), 34 Pa. Code §§ 231.41, 231.42, 231.43.

42.     Throughout her employment with Defendants, Plaintiff regularly worked off-the-clock as part of her job as a CSR.

43.     In order to perform their job duties, Plaintiff and all other CSRs were required to start-up and log-in to various, computer programs, software programs, servers, and applications in order to access information and software. The start-up/log-in process took substantial time on a daily basis with said time ranging from 10 to 15 minutes per day, but extending even longer on days when Plaintiff and the other CSRs experienced technical issues related to Defendants' computers, software, or programs.

44.    Plaintiff and all other CSRs were not actually "clocked in" for their shifts until *after* the computer start-up/log-in process was complete and they logged into the applicable programs, software, servers, and applications, meaning that Plaintiff and other CSRs worked at least 10 to 15 minutes each per shift that they were never compensated for. This off-the-clock time Defendants' CSRs spent starting up and logging into each session directly benefitted Defendants and this process was an essential part of their job responsibilities as CSRs.

45.    Defendants provide their CSRs with one unpaid 30-minute lunch break per shift.

46.    Defendants, however, require their CSRs to perform off-the-clock, unpaid, work functions during the unpaid lunch breaks including, but not limited to: logging into and out of Defendants' computer programs, software programs, servers, and applications. On an average shift, Plaintiff and all other CSRs perform 2 to 3 minutes of off-the-clock, unpaid, work during their lunch breaks.

47.    At the end of each shift, Plaintiff and all other CSRs were required to log-out of Defendants' computer programs, software programs, servers, and applications. The log-out process took substantial time on a daily basis with said time ranging from 5 to 6 minutes per day.

48.    Defendants required Plaintiff and other CSRs to "clock out" *prior* to logging out of the computer programs, software programs, servers, and applications, meaning that Plaintiff and other CSRs worked at least 5 to 6 minutes each per shift that they were never compensated for. This off-the-clock time that Defendants' CSRs spent logging out of each session directly benefitted Defendants and this process was an essential part of their job responsibilities as CSRs.

49.    Between the pre-shift start-up/log-in process, the lunch period log-in and log-out process, and the post-shift log-out process, Defendants failed to pay Plaintiff and other CSRs an amount equal to at least 17 to 24 minutes of compensable time per shift. Additionally, Defendants

failed to compensate Plaintiff and other CSRs for off-the-clock time spent performing work duties during their lunch breaks.

50.    The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/ specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

51.    Defendants knew or could have easily determined how long it took for the CSRs working at the Synchronoss Call Centers to complete the pre-shift start-up/log-in process, the post-shift computer log-out process, and the lunch break work duties, and Defendants could have properly compensated Plaintiff and other CSRs for the work that they performed, but did not.

52.    As an example of one particular workweek where Defendants failed to pay Plaintiff overtime for hours worked in excess of 40 hours (as mandated by the FLSA and PMWA), during the week of January 1, 2018 to January 7, 2018:

> ➤ Plaintiff was paid for 40 hours of regular time and 13.05 hours of overtime.  *See **Exhibit B**.*

> ➤ With pre-, mid-, and post-shift time of approximately 17 to 24 minutes per shift, Plaintiff should have been paid an additional approximately 85 to 120 minutes of overtime compensation for this particular workweek.

> ➤ Defendants also did not include commissions or other incentives earned during this pay period in the calculation of Plaintiff's regular hourly rate, and instead, simply paid her 1.5 times her straight-time hourly rate for the overtime worked.

53.    At all relevant times, Defendants were jointly Plaintiff's "employer" and Defendants directed and directly benefited from the work performed by Plaintiff and other CSRs

during the pre-shift start-up/log-in process, during the post-shift log-out process, in connection with mid-shift off-the-clock technical issues, and during their meal breaks.

54.    At all relevant times, Defendants controlled Plaintiff's and other CSRs' schedule, duties, protocols, applications, assignments, and employment conditions.

55.    According to the Employee Handbook provided to Plaintiff and other CSRs, "[a]ttendance is monitored by assigning occurrence points to issues that arise with employees." Furthermore, the Handbook requires that "[e]mployees must give sufficient notice when requesting time off if at all conceivable ... CoWorx and Synchronoss ask for a two week notice prior to the first day needed off.  Early notification allows for Synchronoss Management to properly plan for work flow.  It is only possible to accommodate so many requests for any particular day.  All requests will be approved or denied based on business needs.  Employees needing to request time off will need to enter the request into the IEX System, as well as notify both employee's Supervisor and a CoWorx representative."

56.    The Handbook illustrates that Defendants apply the same attendance policies for the Bethlehem Call Center as are utilized at the Tucson Call Center.

57.    At all relevant times, Defendants were able to track the amount of time that Plaintiff and the putative Class spent in connection with the pre-shift, lunch break, and post-shift activities; however, Defendants failed to document, track, or pay Plaintiff and other CSRs for the work they performed in connection with each shift.

58.    At all relevant times, Plaintiff and all other CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

59.    At all relevant times, Defendants used their attendance and adherence policies against the CSRs in order to pressure them into performing off-the-clock work.

60.     At all relevant times, Defendants' policies and practices deprived Plaintiff and other CSRs of wages owed for off-the-clock work that Plaintiff and other CSRs performed. Because Plaintiff and other CSRs typically worked 40 hours or more in a workweek, Defendants' policies and practices also deprived Plaintiff and other CSRs of overtime pay at a rate of 1.5 times their regular rate of pay, as required under the FLSA.

61.     Defendants knew or should have known that Plaintiff and other CSRs' time spent in connection with the off-the-clock activities set forth herein were compensable under the FLSA and the PMWA.

## COLLECTIVE ACTION ALLEGATIONS

62.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> *All similarly situated current and former hourly customer sales representatives who worked for Defendants at the Bethlehem, Pennsylvania call center and the Tucson, Arizona call center at any time during the last three years.*

(hereinafter referred to as the "putative collective members"). Plaintiff reserves the right to amend this definition as necessary.

63.     Plaintiff's FLSA claim should proceed as a collective action because Plaintiff and putative collective members, having worked pursuant to common compensation policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

64.     Plaintiff and putative collective members are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same unlawful practice, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

65.     Additionally, the claim that Defendants failed to include commissions, incentives, and other remuneration paid in the overtime rate calculations of the putative collective members is a common policy.

66.     The key legal issues are also the same for putative collective members, to wit: whether the off-the-clock time they spend in connection with performing pre-shift, lunch break, and post-shift activities, is compensable under the FLSA.

67.     Plaintiff estimates that the putative collective members, including both current and former employees over the relevant period, will include several hundred members. The precise number of putative collective members should be readily available from a review of Defendants' personnel and payroll records.

## RULE 23 PENNSYLVANIA CLASS ACTION ALLEGATIONS

68.     Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> *All similarly situated current and former hourly customer sales representatives who worked for Defendants at the Bethlehem, Pennsylvania call center at any time during the last three years.*

(hereinafter referred to as the "Rule 23 Pennsylvania Class"). Plaintiff reserves the right to amend this definition as necessary.

69.     The members of the Rule 23 Pennsylvania Class are so numerous that joinder of all Rule 23 Pennsylvania Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Pennsylvania Class members. Rule 23 Pennsylvania Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

70.     There is a well-defined community of interest among Rule 23 Pennsylvania

members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Pennsylvania Class. These common legal and factual questions, include, but are not limited to, the following:

a.    Whether the pre-shift time Rule 23 Pennsylvania Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

b.    Whether the time Rule 23 Pennsylvania Class members spend on work activities during their lunch break is compensable time;

c.    Whether the post-shift time Rule 23 Pennsylvania Class members spend on log-out activities subsequent to "clocking out" for each shift is compensable time; and

d.    Whether Defendants' failure to pay the Rule 23 Pennsylvania Class members for this pre-, mid-, and post-shift time resulted in a violation of the overtime requirements established by the PWMA, 43 P.S. § 333.104, *et seq.*

71.    Plaintiff's claims are typical of those of the Rule 23 Pennsylvania Class in that they and all other Rule 23 Pennsylvania Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices.   Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Pennsylvania Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Pennsylvania Class members.

72.    Plaintiff will fully and adequately protect the interests of the Rule 23 Pennsylvania Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Pennsylvania Class.

73.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Pennsylvania Class members to prosecute individual actions of their own given the relatively

small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

74.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendants and their corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

75.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

76.    Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Pennsylvania Class and declaratory relief is appropriate in this case with respect to the Rule 23 Pennsylvania Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (Alleging Violations of the Fair Labor Standards Act,
### 29 U.S.C. § 201, *et seq.*)

77.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

78.    At all times relevant to this action, Defendants were joint employers under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

79.    Defendants engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

80.     At all times relevant to this action, Plaintiff was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

81.     Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

82.     At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

83.     At all times relevant to this action, Defendants required Plaintiff and all similarly situated current and former Class members to perform at least 10 to 15 minutes of pre-shift start-up/log-in activities per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

84.     At all times relevant to this action, Defendants failed to compensate Plaintiff and all similarly situated current and former Class members for off-the-clock, unpaid, work activities they performed during their lunch breaks.

85.     At all times relevant to this action, Defendants required Plaintiff and all similarly situated current and former Class members to perform no less than 5 to 6 minutes of post-shift logout activities per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

86.     The off-the-clock work performed by Plaintiff and all similarly situated Class members every session is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

87.     In workweeks where Plaintiff and other Class members worked 40 hours or more,

the uncompensated off-the-clock time should have been paid at the federally mandated rate of 150% of each employee's regularly hourly wage. *See* 29 U.S.C. § 207.

88.     Defendants failed to properly calculate the regular hourly rate for Plaintiff and other Class members by not including non-discretionary bonuses and commissions in the calculation of their overtime rates.

89.     Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have easily determined how long it took for their CSRs perform the off-the-clock pre-shift, lunch break, and post-shift activities, and Defendants could have properly compensated Plaintiff and the Class for the work they performed, but did not.

90.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

### COUNT II
### (Alleging Violations of the Pennsylvania Minimum Wage Act, 43  P.S. § 333.101, *et seq.*)

91.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

92.     All members of the Rule 23 Pennsylvania Class are entitled to their regular wages and overtime wages pursuant to the PMWA, 43 P.S. § 333.101, *et seq.*, and the relevant portions of the Pennsylvania Code, 34 Pa. Code § 231.1, *et seq.*

93.     By failing to pay Plaintiff and members of the Rule 23 Pennsylvania Class for all hours worked in excess of 40 hours a week at one and one-half times their regular rates, Defendants violated the PMWA. *See*, *e.g.*, 43 P.S. § 333.104(c), 34 Pa. Code § 231.41.

94.     By failing to include nondiscretionary bonus compensation by Plaintiff and

members of the Rule 23 Pennsylvania Class as part of their "regular rate of pay" for the purpose

of calculating overtime rates, Defendants have violated the PMWA. *See, e.g.*, 43 P.S. §

333.104(c), 34 Pa Code §§ 231.41, 231.42, 231.43.

95.    A three-year statute of limitation applies to all above claims.

96.    Defendants violated the PMWA, including by regularly and repeatedly failing to

compensate Plaintiff and the Rule 23 Pennsylvania Class for the time spent on the work activities

described in this Complaint. As a result, Plaintiff and the Rule 23 Pennsylvania Class have and

will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Rule 23

Pennsylvania Class are entitled to recover unpaid wages owed, plus costs and reasonable

attorneys' fees, and other appropriate relief under Pennsylvania law, including, but not limited to

all damages, fees, and costs available under 43 P.S. § 333.101, *et seq*.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, Robin Bell requests the following relief:

a.    An Order certifying this case as a collective action in accordance with 29
U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    An Order certifying this action as a class action (for the Rule 23
Pennsylvania Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to
Plaintiff's Pennsylvania state law claims (Count II);

c.    An Order compelling Defendants to disclose in computer format, or in print
if no computer readable format is available, the names and addresses of all
FLSA putative collective members and Rule 23 Class members, and
permitting Plaintiff to send notice of this action to all those similarly
situated individuals, including the publishing of notice in a manner that is
reasonably calculated to apprise the class members of their rights by law to
join and participate in this lawsuit;

d.    An Order designating Plaintiff as the representative of the FLSA collective
and the Rule 23 Pennsylvania Class, and undersigned counsel as Class
counsel for the same;

e.    An Order declaring Defendants violated the FLSA and the Department of

Labor's attendant regulations as cited herein;

f.    An Order declaring Defendants' violation of the FLSA was willful;

g.    An Order declaring Defendants violated the PMWA by failing to properly pay the Pennsylvania Class overtime wages, as set forth herein;

h.    A Judgment in favor of Plaintiff and against Defendants and awarding Plaintiff and the FLSA Collective and the Rule 23 Pennsylvania Class, the full amount of damages and liquidated damages available by law;

i.    An award of reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

j.    An award of pre- and post-judgment interest to Plaintiff on these damages; and

k.    An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a jury trial.

Dated:   July 3, 2018

Peter Winebrake, Esq.
R. Andrew Santillo, Esq.
Mark J. Gottesfeld, Esq.
WINEBRAKE & SANTILLO
715 Twining Road, Suite 211
Dresher, Pennsylvania 19025
Ph: (215) 884-2491
pwinebrake@winebrakelaw.com
asantillo@winebrakelaw.com
mgottesfeld@winebrakelaw.com

Matthew L. Turner, Esq.*
Charles R. Ash IV, Esq.*
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Ph: (248) 355-0300
mturner@sommerspc.com
crash@sommerspc.com

*Counsel for Plaintiff*

\* Pro hac vice admission anticipated

# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

**ROBIN BELL**, individually, and on
behalf of others similarly situated,

Case No.

        Plaintiffs,

vs.

**COWORX STAFFING SERVICES,
L.L.C.,** a Pennsylvania limited liability
company, and **SYNCHRONOSS
TECHNOLOGIES, INC.,** a Delaware
corporation,

        Defendants.

---

## CONSENT TO JOIN

    I work or worked for CoWorx Staffing Services, L.L.C. ("CoWorx") and Synchronoss Technologies, Inc. ("Synchronoss") as an hourly, non-exempt Customer Sales Representative and worked uncompensated overtime.

    I choose to participate in the above-captioned lawsuit, to recover unpaid overtime wages under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b), and other relief under federal law.

    I choose to be represented in this action by the named plaintiffs and Sommers Schwartz, P.C. ("Plaintiff's Counsel"). I agree to be bound by their decisions in the litigation and by any adjudication of this action by a court, whether it is favorable or unfavorable. I understand that reasonable costs expended by Plaintiff's Counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs. I understand that Plaintiff's Counsel will petition the Court to award them attorneys' fees from any settlement or judgment.

    I also consent to join any separate or subsequent action to assert my claims against CoWorx and Synchronoss and/or any related entities or persons potentially liable.

Print Name:    robin a bell

Signature:

Date:    06/08/2018

# Exhibit B



Call us 1 800 754 7000

Welcome to the CoWorx Self Serve Paperless Paystub

**SSN** ***-**-████  ROBIN A  BELL     **Y-T-D TX GROSS** 1,136.78  **CK#** 0630820
**CHECK DATE** 1/12/2018

| COMPANY | TYPE | HOURS | RATE | PAY_PERIOD | AMOUNT |
|---------|------|-------|------|------------|--------|
| SEQUENTIAL | OVERTIME HOURS | 13.05 | 20.67 | 1/1/2018-1/7/2018 | 269.7435 |
| SEQUENTIAL | REGULAR HOURS | 40 | 13.78 | 1/1/2018-1/7/2018 | 551.2 |

| WITHHOLDINGS | AMOUNT | YTD | DEDUCTIONS | AMOUNT | YTD |
|--------------|--------|-----|------------|--------|-----|
| FEDERAL | 57.74 | 57.74 | DENTAL EE | 3.37 | 6.74 |
| FICA | 49.63 | 67.94 | INSURE BASIC EMPLOYEE | 17.11 | 34.22 |
| FICA MED | 11.61 | 15.89 | | | |
| STATE | 24.57 | 33.64 | | | |
| S.U.I. | 0.49 | 0.68 | | | |
| CITY | 9.6 | 13.15 | | | |
| CITY OCC PRIV/HEAD TAX | 1 | 2 | | | |

**TOTAL EARNINGS** 820.94   **TOTAL W/H** 154.64 **TOTAL DED** 20.48 **CK NET** 645.82
**TAXABLE GROSS** 820.94

TOTAL HOURS WORKED : 53.05

**CoWorx Staffing Services LLC**
1375 Plainfield Avenue, Watchung, NJ 07069

Questions?  Call CoWorx at 1-800-754-7000

SELECT ANOTHER CHECK